**Mary Kathleen LANE, a/k/a Mary K. Lane, and Ross E. Lane, her husband, Plaintiffs-Appellants,**

v.

**W. S. WALLACE, M. D., Dan B. Holton, M. D., and W. W. Wersich, M. D., Defendants-Appellees.**

No. 76–2172.

United States Court of Appeals, Tenth Circuit.

July 5, 1978.

Jack Dalton, Dodge City, Kan. (Barry K. Gunderson and Mangan, Dalton, Trenkle & Gunderson, Dodge City, Kan, with him on the brief), for plaintiffs-appellants.

Dale S. Carpenter, III, Denver, Colo. (Roger F. Johnson, Johnson & Mahoney, P. C., Denver, Colo., with him on the brief), for appellee, W. W. Wersich, M. D.

Lee R. Wills, Colorado Springs, Colo. (Kane, Donley & Wills, Colorado Springs, Colo., with him on the brief), for appellees, W. S. Wallace, M. D., and Dan B. Holton, M. D.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a medical malpractice suit in which the jury returned a verdict for the three doctors, defendants-appellees. Jurisdiction is based on diversity. The plaintiffs-appellants, Mary Kathleen Lane, and her husband, Ross E. Lane, appeal from the judgment dismissing their action. Prime reliance is placed on claims of judicial misconduct. We affirm.

Mrs. Lane and her husband live in Leoti, Kansas. The three doctors practice their profession in Pueblo, Colorado. In October, 1972, radiological tests were performed on Mrs. Lane by defendants Wallace and Horton, each of whom is a radiologist. The tests showed a suspicious radiolucency or lesion on her right renal pelvis. Defendant Wersich, a urologist, was consulted. In December, 1972 additional radiographic and urographic tests were made and, in the opinion of the defendants, indicated the presence of suspicious radiolucency. With the approval of Mrs. Lane, defendant Wersich performed exploratory kidney surgery which disclosed no tumor or malignancy. Some months later a pseudocyst was discovered at the operative site and a doctor,

other than the defendants, removed the right kidney.

Mrs. Lane and her husband brought this suit, in the United States District Court for the District of Colorado, claiming that the defendant doctors were negligent in not apprising plaintiffs of the hazards of exploratory surgery and in their diagnosis and surgery. The case was tried before a jury in Pueblo, Colorado. United States District Judge Winner presided at the trial. Plaintiffs presented the testimony of six doctors, three of whom testified in person and three by deposition. The three defendant doctors testified, two in person and one by deposition. Four other doctors testified for the defense. The medical evidence was in sharp disagreement. No good purpose would be served by an analysis of that evidence because the plaintiffs-appellants concede that substantial evidence sustains the verdict. By its verdict the jury accepted the testimony of the defense experts.

■ When the trial began on a Monday, the court announced that it hoped to conclude within the week. A prolonged snow storm hampered travel to the inconvenience of all, particularly out-of-town witnesses. Two of plaintiffs' medical witnesses, Doctors Doak and Brownrigg, lived in Kansas and were prevented from reaching Pueblo by the storm. The court denied plaintiffs' request for a continuance. In the circumstances presented, the denial was a proper exercise of the court's discretion. See *Community National Life Insurance Company v. Parker Square Savings and Loan Association,* 10 Cir., 406 F.2d 603, 605.

Defense counsel had taken the deposition of Dr. Doak. The court ordered that, because of the doctor's inability to attend, his deposition be read in place of his testimony. Plaintiffs objected on the ground that the deposition had been taken by the defendants. The deposition sets out in detail Dr. Doak's analysis of the pertinent X-rays and his conclusions as to the defendants' negligence. Plaintiffs have not specified any possible testimony of Dr. Doak which was inadequately covered by the deposition. The court did not abuse its discretion in requiring the use of the deposition in the absence of Dr. Doak.

Dr. Brownrigg, another plaintiffs' witness living in Kansas, was also delayed by the storm. The problem caused considerable colloquy, in the course of which the court commented that other means of transportation were available to Dr. Brownrigg than the private plane which he wished to use. Because of uncertainty as to when Dr. Brownrigg would be available, defense counsel offered to present some of their witnesses out of turn. The court said, without objection by the plaintiffs, that if the witnesses came, they could testify out of turn. On the next day, the fifth of the trial, Dr. Brownrigg was present and began his testimony. Later, two Denver doctors appeared and the court interrupted Dr. Brownrigg's testimony so that the Denver doctors could testify. To avoid confusion, the court explained to the jury its reasons for the interruption of Dr. Brownrigg's testimony. Later Dr. Brownrigg testified in full and at length as to his finding of lack of professional care by the defendants. The interruption did not damage plaintiffs' case. The court acted within its discretion.

■ The main thrust of plaintiffs' argument on this appeal is that they did not have a fair trial because of the misconduct of the trial judge. Counsel from without the District of Colorado tried the case for the plaintiffs and represents them on this appeal. He asserts that mistreatment of him by the court damaged his presentation of his clients' cause. Difficulties between him and the judge began early in the trial. In his opening statement plaintiffs' counsel referred to Mrs. Lane at least 14 times as "Kathy." Mrs. Lane had been married nearly 20 years and had four children. At the conclusion of all opening statements and out of the presence of the jury, the judge said:

"* * * it has been the rule in the United States Supreme [sic.] Court for the District of Colorado at least since 1963, that any witness over the age of 18, you don't use their first name. That gives a very unfair advantage and a very

unfair flavor to the case  *  *  *  *.  I will not make my next suggestion outside the presence of the jury.  *  *  *  * if you slip again I am going to correct you in the presence of the jury.  And that's unfair to the plaintiff to have me criticize you in the presence of the jury."

Later in the day during the direct examination of Mrs. Lane, the lawyer again called her "Kathy." The judge excused the jury and again admonished the lawyer, saying:

"* * * I have given you my last warning. This will be a grave injustice to your client if I am forced to declare a mistrial, but it is an injustice that will result totally and entirely from your conduct."

Counsel abstained from the use of the first name throughout the remainder of the trial. We approve of the judge's action. First-name familiarity with an adult is not appropriate in the court room. Every witness must be treated with formality and respect. First-name use is sometimes demeaning and patronizing, and at other times favor seeking. Counsel's conduct may not be forgiven because he was out of his bailiwick. Procedural rules which applied to Colorado lawyers also applied to him. The admonitions were proper, were out of the presence of the jury, and could not have affected it. In the five and a half days of trial which followed, counsel diligently presented the plaintiffs' case and in both direct and cross examination of the expert witnesses, thoroughly and carefully tested the validity of their evidence. The occasional criticisms and impatience on the part of both court and counsel were the product of counsel's conduct and the inclement weather. The record discloses no restraint on counsel's proper advocacy of his clients' cause.

■ Other incidents of claimed misconduct need not be discussed in detail. Some related to evidential rulings of little consequence, others to legal arguments, and some to statements regarding counsel's conduct. An expression of the court's views on conduct of counsel, within proper limits, is permissible provided the jury is given to understand that the jury is free to form its own opinion of the facts and apply the law to them. See *Union Carbide and Carbon Corporation v. Nisley,* 10 Cir., 300 F.2d 561, 586, petition for cert. dismissed 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46. The jury was instructed that it was the sole judge of the facts and credibility of the witnesses, and that nothing said by the court should be considered as indication of a belief of what the facts are or as to which party should prevail. In its instructions the court did not comment on the evidence.

■■ Plaintiffs are constitutionally entitled to a fair trial before an impartial jury presided over by an unbiased and circumspect judge. See *Moore v. Strong,* 10 Cir., 360 F.2d 71, 76–78 and *United States v. Sowards,* 10 Cir., 339 F.2d 401, 403. A judge is more than a spectator or an umpire. He has the responsibility of assuring the proper conduct of the trial. *Jordan v. United States,* 10 Cir., 295 F.2d 355, 356, cert. denied 368 U.S. 975, 82 S.Ct. 479, 7 L.Ed.2d 438.

■ Ever increasing litigation places intolerable burdens on federal judges with resulting irritation and impatience. Heavy as they are, the judiciary must bear these burdens. In so doing, judges should be ever mindful of the words of Francis Bacon in his essay on "Judicature." Francis Bacon, Essays, pub. by J. M. Dent & Sons, 1958, Essay LVI, pp. 162, 163:

"Judges ought to be more learned than witty; more reverend than plausible; and more advised than confident. * * Patience and gravity of hearing is an essential part of justice; and an overspeaking judge is no well tuned cymbal."

Expressed in modern parlance, a judge should not talk too much. Bacon also said, Ibid. at 164:

"And let not counsel at the bar chop with the judge, nor wind himself into the handling of the cause anew after the judge hath declared his sentence * * * *."

The meaning is that an advocate should not protest too much. Valuable as these philo-

sophical comments are, we must consider the problem in the light of legal precedents.

A litigant is entitled to a fair trial but not a perfect one, "for there are no perfect trials." *Brown v. United States,* 411 U.S. 223, 231–232, 93 S.Ct. 1565, 36 L.Ed.2d 208. See also *United States v. Hill,* 10 Cir., 526 F.2d 1019, 1025, cert. denied 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182. The minor incidents of which plaintiffs complain did not affect their substantial rights. *United States v. Cardall,* 10 Cir., 550 F.2d 604, 605, cert. denied 434 U.S. 841, 98 S.Ct. 137, 54 L.Ed.2d 105; and *United States v. Redmond,* 10 Cir., 546 F.2d 1386, 1390–1391, cert. denied —— U.S. ——, 98 S.Ct. 1645, 56 L.Ed.2d 83. "We must guard against the magnification on appeal of instances which were of little importance in their setting." *Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680.

Plaintiffs had full opportunity to present their case. The trial developed into a contest of experts. The jury chose to accept the defense evidence. The record considered as a whole, not limited to the excerpts selected by plaintiffs' counsel, convinces us that under difficult conditions, which perhaps tried the patience of all, the plaintiffs had a fair and impartial trial.

Plaintiffs say that the court erred in permitting an expert witness for the defense to testify beyond the scope of his pre-trial statement. The pre-trial order required that each party furnish to the other a report of expert testimony to be offered. With regard to Dr. DeFalco, a defense witness, the furnished report covered diagnosis and recommendation for exploratory surgery. At the trial the doctor, over plaintiffs' objection testified with regard to post-operative care. The pre-trial order prescribed no sanctions for noncompliance. The court asked defense counsel whether he was surprised by the testimony now attacked, and received a negative answer. In the circumstances the receipt of the testimony was not erroneous.

With regard to the standard of care required of the defendants, the court referred to

"that reasonable degree of learning and skill ordinarily possessed by physicians in the same field in the same or a similar locality at the same time * * *."

The court also instructed the jury that a doctor who holds himself out as a specialist in a particular field "must use his skill and knowledge as a specialist in a manner consistent with a special degree of skill and knowledge ordinarily possessed by other specialists" in the field. Every doctor who testified was a board certified expert in his field. Plaintiffs do not claim that the instructions misstated Colorado law. Instead they complain that the "locality" instruction contravened the pre-trial order. We do not agree. The pre-trial order merely recognized that the experts to be called shared common qualifications and the "standards of care are reasonably consistent in the areas involved." The objection to the instructions has no merit.

Affirmed.