Ivan A. ANIXTER, et al.,
Plaintiffs/Appellees,

v.

HOME–STAKE PRODUCTION
COMPANY, et al.,
Defendants,

and

Wynema Anna Cross, Executrix of the Estate of Norman C. Cross, Jr., et al., Defendants/Appellants.

Ivan A. ANIXTER, et al.,
Plaintiffs/Appellees,

v.

HOME–STAKE PRODUCTION
COMPANY, et al.,
Defendants,

and

Kothe & Eagleton, Inc.,
Defendant/Appellant.

Nos. 90–5040 through 90–5049, 90–5051, 90–5053, 90–5055—90–5059, 90–5062 and 90–5067.

United States Court of Appeals,
Tenth Circuit.

Oct. 23, 1992.

Walter Steele, Denver, Colo., and Thomas M. Affeldt, co-counsel, (Jack L. McNulty and C.B. Savage with them on the briefs) of Savage, O'Donnell, Scott, McNulty & Affeldt, Tulsa, Okl., for defendant-appellant E.M. Kunkle.

B. Hayden Crawford (Kyle B. Haskins with him on the briefs) of Crawford, Crowe & Bainbridge, P.A., Tulsa, Okl., for defendants-appellants Norman C. Cross, Jr.; Wynema Anna Cross, Executrix of Estate of Norman C. Cross, Jr.; and Cross and Co.

Stan P. Doyle (James C. Thomas with him on the briefs) of Doyle & Harris, Tulsa, Okl., for appellant-defendant Kothe & Eagleton, Inc., a professional corp.

Peter Van N. Lockwood (Albert G. Lauber and Jill R. Shellow with him on the briefs) of Caplin & Drysdale, Chartered, Washington, D.C., (Elihu Inselbuch of Caplin & Drysdale, New York City, William A. Wineberg and Michael R. Simmonds of Broad, Schulz, Larson & Wineberg, San Francisco, Cal., and William H. Hinkle, Tulsa, Okl., with him on the briefs) for plaintiffs-appellees.

Frank E. Sims, pro se defendant-appellant, Tulsa, Okl., on the brief.

Robert S. Trippet, pro se defendant-appellant, Tulsa, Okl., on the brief.

Timothy E. Flanigan, Acting Asst. Atty. Gen., Tony M. Graham, U.S. Atty., Barbara C. Biddle and Jeffrey K. Shapiro, Dept. of Justice, Washington, D.C., on the brief for intervenor U.S.

James R. Doty, Jacob H. Stillman, Leslie E. Smith, and Randall W. Quinn, Washington, D.C., on the brief for amicus curiae S.E.C.

Before MOORE, ANDERSON, and BRORBY, Circuit Judges.

## ORDER ON PETITIONS FOR REHEARING

JOHN P. MOORE, Circuit Judge.

Upon our order reviving plaintiffs' claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, based on § 27A of the Securities Exchange Act of 1934, § 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, and rejecting certain defendants' contention the district court erred by reinstating the § 10(b) claims against them during trial, *Anixter v. Home–Stake Prod. Co.*, 977 F.2d 1533 (1992) (*Anixter II*), defendants Kothe & Eagleton, Inc. (K & E); Wynema Anna Cross, Executrix of the Estate of

Norman C. Cross, Jr., and Cross & Company (Cross); and E.M. Kunkel (Kunkel) have filed three separate petitions for rehearing. We deny the petitions in part and grant in part to remand on the issues of the statute of limitations and prejudgment interest with the following amplifications.

In its separate petition, K & E urges the 1971 Class plaintiffs' § 10(b) action is time-barred under the applicable Oklahoma statute of limitations to which we must look under § 27A. Given our selection of April 30, 1971, as the time from which notice was triggered, or the date of purchase if purchased after the discovery date, *Anixter v. Home–Stake Prod. Co.*, 939 F.2d 1420, 1440 (10th Cir.1991) (*Anixter I*), K & E argues because the last date of sale for the 1971 Program was December 31, 1971, the last date for filing could be no later than December 31, 1973. K & E contends, therefore, plaintiffs' May 24, 1974, suit was untimely and should be dismissed even under § 27A.

■ Although we look to federal law to determine when the statute of limitations begins to run, state law governs the length of that limitary period. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir.1987) (citation omitted). In this case, as previously noted, Oklahoma law sets the applicable limitary period to file an action for fraud as two years from the date of discovery, Okla.Stat.Ann. tit. 12, § 95, to run "from the date of actual or constructive discovery of the fraud." *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 171 (10th Cir.1974). "The crucial issue of fact with respect to the commencement of the running of the applicable two-year statute of limitations is when the plaintiff actually knew, or in the exercise of reasonable diligence should have known, of the existence of the alleged fraudulent ... activity on the part of the defendants." *Id.* at 171–72.

■ Moreover, because § 27A reinstates a statute of limitations for actions under

§ 10(b) commenced on or before June 19, 1991, and rejects the imposition of a statute of repose as found in § 13 of the Securities Act of 1933, 15 U.S.C. § 77m, and announced in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), principles of equitable tolling enunciated throughout federal law, *see Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), and *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), and mirrored in Oklahoma law, *see, e.g., Dearing v. State ex rel. Comm'rs of Land Office,* 808 P.2d 661 (Okla.1991), may also be read into the two-year period. *State of Ohio v. Peterson, Lowry, Rall,* 651 F.2d 687, 691 (10th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). Federal law determines what circumstances will toll a state statute of limitations applied to private actions under § 10(b). *Esplin v. Hirschi,* 402 F.2d 94, 103 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

■ Albeit our selection of April 30, 1971, as the date from which plaintiffs' were placed on notice of the alleged fraudulent acts, the jury answered special interrogatories [1] finding the 1971 Class plaintiffs in the exercise of reasonable diligence could not have discovered K & E's involvement in the alleged fraud until September 1973, the time when Home–Stake declared bankruptcy. Given the many theories of fraudulent concealment presented to the jury and the court's instructing the jury on equitable estoppel, we cannot say with certainty whether the jury's factual finding on the statute of limitations implicitly incorporated a finding the statute was equitably tolled. Moreover, because K & E was not named in the 1971 SEC suit, the jury may well have considered equitable tolling in arriving at the later September 1973 date.

We recognize in securities fraud cases the cause of action may accrue at a separate and distinct time from when the plaintiff/investor is injured. That is, a material

---

**1.** The jury returned special interrogatories on the statute of limitations for each of the plaintiff classes.

misrepresentation may far precede plaintiff's injury. Nevertheless, an aggrieved investor must bring an action once he discovers or should have discovered the fraud. "The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act." *Volk*, 816 F.2d at 1413 (citation omitted) (quoting *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 213–14 (9th Cir.1962). Indeed, in *Anixter I*, we noted the various investment and tax concerns that individual investors, later class representatives, considered upon learning of the rescission offer.

We must, therefore, remand this action for the trial court to determine whether the contested § 10(b) class action was timely filed based on these considerations and the standards we announced in *Anixter I*. The district court is in a better position to make those findings in accordance with this order and other relevant factors we have set forth.

Notwithstanding this disposition, we reject K & E's contention its activity did not amount to proof of scienter under § 10(b) and Rule 10b–5. Evidence was introduced in support of plaintiffs' claims K & E was primarily and secondarily liable under Rule 10b–5, and the jury was instructed without objection on each of the elements necessary to find liability. Moreover, we have held proof of recklessness satisfies the requirement for scienter, not only aligning ourselves with other Circuits but also fulfilling the principle, "the Securities Acts are to be broadly construed to achieve their remedial goals." *Hackbart v. Holmes*, 675 F.2d

1114, 1117 (10th Cir.1982) (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). Again, the jury placed its stamp on the evidence related to the actions of David James and John Eagleton, K & E attorneys who participated in the 1971 Home–Stake offering. K & E's version of this evidence cannot now displace the verdict.

Cross seeks rehearing to dismiss the tagalong judgment in an appended non-class action, *Anderson v. Home–Stake Prod. Co.*, 74–C–180, 1989 WL 201629, which involved claims of 1969 and 1970 individual investors.[2] The individual 1969 and 1970 § 10(b) actions were not filed until April 25, 1974. In contrast, the 1965 through 1971 Class representatives filed suit against Cross on March 30, 1973, just within two years of April 30, 1971. As already noted, the jury made factual findings on each plaintiff class,[3] but no such special interrogatory was returned for these particular claims. This gap is not filled by the court's October 17, 1988, order summarily concluding these claims were timely. Extrapolating from all of these facts and adhering to our prior determination setting April 30, 1971, as the date on which the discovery period began, we, therefore, conclude the individual *Anderson* 1969 and 1970 claims which were not filed until April 25, 1974, must be dismissed. Section 27A would not revive those claims.

▮ The remainder of the contentions raised by Cross in their petition for rehearing are without merit. We cannot say the district court abused its discretion in its evidentiary rulings[4] or that the court's ac-

---

**2.** We do not find this precise issue raised before; nevertheless, we proceed to dispose of it.

**3.** The special interrogatory stated:

Do you find that plaintiffs have proved by a preponderance of the evidence that William Grohne, individually and as representative of the 1970 Class, did not discover nor should have discovered by the exercise of reasonable diligence, *until September 1973*, that defendant Norman C. Cross, Jr. violated Rule 10b–5 or aided and abetted a violation of Rule 10b–5?

**4.** Specifically, Cross contends the court committed reversible error in preventing three I.R.S. agents from testifying as fact witnesses about accounting methods, the question of oversales of programs, and the treatment of "pro rev" in the I.R.S. audit. The court sustained objections, finding the case was not centrally a tax case, the witnesses could not be qualified as expert auditors, and could not properly testify on Mr. Cross' state of mind. The district court also excluded testimony from Mark Van Loucks, who was proffered by Cross as a potential investor to explain his understanding of Home–Stake's annual reports. The court sustained the

tive participation in the trial amounted to a denial of Cross' constitutional right to due process and a fair and impartial trial. As Judge Breitenstein of venerable memory once observed, "Ever increasing litigation places intolerable burdens on federal judges with resulting irritation and impatience. Heavy as they are, the judiciary must bear these burdens." *Lane v. Wallace*, 579 F.2d 1200, 1203 (10th Cir.1978). However, reviewing this record as a whole, as did the *Lane* court, and "guard[ing] against the magnification on appeal of instances which were of little importance in their setting," *id.* at 1204 (citation omitted), we are satisfied Cross received a fair trial. While it bears remembering "[p]atience and gravity of hearing is an essential part of justice; and an overspeaking judge is no well tuned cymbal," Francis Bacon, *Essays*, pub. by J.M. Dent & Sons, 1958, Essays LVI, pp. 162, 163, cited in *Lane*, the district court's interjecting itself into the questioning of witnesses and occasional outbursts of pique did not affect Cross' substantial rights. Though not a perfect trial, Cross received a fair trial under all of the circumstances.

The joint petition for rehearing filed by K & E, Cross, and Kunkel states our prior decisions overlooked causation issues, the district court's improper calculation of damages and disregard of settlement benefits already received, the unfair and excessive award of prejudgment interest and entitlement to postjudgment interest, and certain unresolved errors that would compel granting a new trial on the § 10(b) and Rule 10b–5 claims. In our effort to bring finality to this action, the prior opinions were limited to the dispositive resolutions and did not reflect our review of the considerable record. Upon our refreshing that review, we remain convinced the issues raised on causation and the motion for new trial are without merit. During trial, defendants could not overcome plaintiffs' substantial evidence supporting their claims under § 10(b) and Rule 10b–5. De-

fendants' recharacterization of that evidence again is defied by the record.

Certain of the numerous issues related to the calculation and award of damages under § 10(b), however, merit some discussion. The jury was instructed, "As a general matter plaintiffs' damages will be the amount they paid for their Home–Stake units minus any distributions made to them by Home–Stake prior to its filing for reorganization and minus the value, if any, of their Home–Stake units on various dates set by law." Tr. at 4843, May 19, 1989. The jury returned verdicts setting the value of each program interest for purposes of calculating plaintiffs' damages.

▪ Although a rescissory measure of damages may be available in certain cases under § 10(b), *Randall v. Loftsgaarden*, 478 U.S. 647, 661–62, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986), the more typical remedy generally limits the plaintiff's recovery to out-of-pocket losses or actual damages. § 28(a) of the Securities Exchange Act of 1934; 15 U.S.C. § 78bb(a); *Feldman v. Pioneer Petroleum, Inc.*, 813 F.2d 296, 301 (10th Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). That is, "the correct measure of damages under § 28 of the Act, 15 U.S.C. § 78bb(a), is the difference between the fair value of all that the [plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct." *Randall*, 478 U.S. at 661–62, 106 S.Ct. at 3151–52 (quoting *Affiliated Ute Citizens*, 406 U.S. at 155, 92 S.Ct. at 1473).

▪ The final judgments entered by the district court reflected this out-of-pocket measure of damages, less various sums related to prior distributions and settlements. The district court refused to offset the amounts received in tax benefits against the § 10(b) judgments. Joint defendants continue to press this alleged error.

Although the *Randall* Court left open this precise question,[5] and focussed its dis-

---

objection to that testimony under Fed.R.Evid. 701.

5. In his concurring opinion, J. Blackmun observed, "The Court recognizes that it may be proper to reduce recovery in cases brought sole-

cussion solely on whether tax benefits may reduce a rescissory measure of damages under § 12(2) of the Securities Act of 1933 and § 10(b), not present in our case, we find no guidance in existing case law under *Randall* to warrant a different treatment here.[6] We hold, therefore, the district court did not err in disallowing a reduction in plaintiffs' recovery based on the tax benefits received.

Our review produces a different result on the continuing objection to prejudgment interest awarded. Although the district court held as a matter of law prejudgment interest was available, we cannot discern the analysis it employed, if any, to arrive at that result.

■ We have stated under federal law prejudgment interest is generally available "to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir.1988). Despite the general availability of prejudgment interest absent some justification for withholding it, federal law does not make it available as a matter of right. Factored into these general compensatory principles are "fundamental considerations of fairness." *Id.* (citation omitted).

■ We have thus applied a two-step analysis to decide whether prejudgment interest should be awarded. "First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest." *Id.* at

1257. Added to this analysis are the special concerns in securities fraud cases where a defendant's behavior has involved dishonest or fraudulent conduct. Recognizing this special consideration in such cases permits prejudgment interest to be awarded as part of compensatory damages, *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77 (2d Cir.1980); however, prejudgment interest is not mandatory. *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 28 (2d Cir. 1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

The record before us does not disclose this two-step analysis underpinning the district court's award of prejudgment interest.[7] This is particularly troubling given the approximately fifteen-year gap between the filing of the complaints in 1973 and trial of the action in 1988. Moreover, given the disparity between the award of prejudgment interest and the damages,[8] we believe these findings are essential to dispel the contention the award was, in fact, punitive. In this reexamination, however, we reject joint defendants' contention their liability for prejudgment interest, if awarded, does not arise until August 24, 1992, the date on which we reinstated the § 10(b) judgment. Despite the on-again-off-again history of this claim, prejudgment interest accrued until the time judgment was entered and remains fixed at that date. *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

Finally, joint defendants assert the reinstatement of the November 16, 1989, judgments resurrects a similar question on postjudgment interest. Defendants urge we find postjudgment interest does not be-

---

ly under § 10(b) and involving securities as to which tax consequences provided a major inducement to investment, and I therefore join its opinion." 478 U.S. at 670, 106 S.Ct. at 3156.

**6.** Before *Randall,* the issue was analyzed by utilizing the collateral source rule, now displaced by *Randall. See, e.g., William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 941 (2d Cir.1984), *cert. granted & judgment vacated by,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986).

**7.** This absence in the record cannot be explained and overlooked under Fed.R.Civ.P. 52(a) as plaintiffs contend.

**8.** For example, the 1967 Class which had a gross investment of $6,669,950 was awarded $1,236,-629.11 in damages and $9,787,602.62 in prejudgment interest.

gin to run until August 24, 1992, the date we reinstated the § 10(b) claims.

However, postjudgment interest is a creature of statute.[9] Under 28 U.S.C. § 1961, "[i]nterest shall be calculated from the date of the entry of the judgment." Although there is precedent in this Circuit to award postjudgment interest from the date judgment was entered on remand, *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 607 F.2d 335, 336 (10th Cir.1979) (per curiam), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980), the court did so because of "the extent to which the case was reversed, 'the judgment' for the purpose of interest was that entered by the trial court on remand." We think, however, this case is closer to *Northern Natural Gas Co. v. Hegler*, 818 F.2d 730, 737 (10th Cir.1987), *cert. dismissed,* 486 U.S. 1063, 109 S.Ct. 7, 100 L.Ed.2d 937 (1988), in which the court held the prior reversal only involved questions of valuation, not liability itself. We, therefore, have no basis here to entertain defendants' contrary contention.

Finding no merit in the assertions of error in the district court's refusal to disallow other deductions for trustee distributions, attorney fees, and additional anticipated recoveries, we partially GRANT rehearing, and on rehearing and redetermination REMAND this action for findings on the statute of limitations and prejudgment interest consistent with this order. We REVERSE the judgment on the individual *Anderson* 1969 and 1970 complaints and ORDER their dismissal. Rehearing is otherwise DENIED, and the judgment of the district court is AFFIRMED.

---

**9.** 28 U.S.C. § 1961 provides:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.