UNITED STATES COURT OF APPEALS
**Filed 10/23/96**
FOR THE TENTH CIRCUIT

JOHN F. PERRY and ERIN A. PERRY,

        Plaintiffs-Appellants,

v.

PHILLIP DON ROBINSON, an individual, DIXIE OIL COMPANY INCORPORATED, an Oklahoma corporation, GENESIS ENERGY CORPORATION, an Oklahoma corporation,

        Defendants,

and

INVESTORS PLANNING INC., a Georgia corporation, CHARLES H. YESSICK, JR., doing business as Yessick Energy, individually, and IFG NETWORK SECURITIES INC., a Florida corporation,

        Defendants-Appellees.

No. 96-6027
(D.C. No. CIV-94-0070-L)
(W.D. Okla.)

Before BRISCOE and MURPHY, Circuit Judges, and VAN BEBBER,[**] District Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellants John and Erin Perry appeal the district court's grant of summary judgment to defendants on their claims for state and federal securities fraud, mail and wire fraud, RICO, and various state law claims. Plaintiffs' claims arose from their failed investment in a series of oil and gas interests in Oklahoma. In granting summary judgment to defendants, the trial court held that the securities

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable G. Thomas Van Bebber, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

claims were barred by the applicable statutes of limitation[1] and that plaintiffs had failed to allege or demonstrate sufficient facts to survive a motion for summary judgment on their remaining fraud and breach of contract claims.  Because we agree with the district court in all respects, we affirm.

We review the district court's grant of summary judgment de novo.  Eaton v. Jarvis Prods. Corp., 965 F.2d 922, 925 (10th Cir. 1992).  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is to be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Here, we view the record in the light most favorable to plaintiffs, as the nonmovants, and require defendants to show that they are entitled to judgment as a matter of law.  See Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir. 1987).  Once defendants make this showing, however, it is up to the plaintiffs to come forth with specific facts demonstrating the existence of a genuine, dispositive issue on which they will bear the burden of proof at trial.   See Celotex Corp. v. Catrett, 477 U.S. 317, 324, (1986).

The basic facts of this case are familiar to the parties, and we will repeat them here only in summary fashion.  During the summer of 1991, defendant

---

[1]     Plaintiffs' claims under the Oklahoma Securities Act survived defendants' motion for summary judgment but were later dismissed without prejudice when the district court, in its discretion, refused to exercise its supplemental jurisdiction over these state law claims. See App. Vol. 1 at 92.  Plaintiffs do not argue the propriety of this action on appeal.

Charles Yessick approached plaintiffs with details of an investment opportunity in Oklahoma oil and gas wells operated by Big Horn Oil Company (Big Horn). Based on Yessick's representation to plaintiffs that he was not being paid a commission or any mark up to market the properties, and that he would be compensated from the retained holdings of Big Horn, plaintiffs invested over $500,000 in various wells. Yessick also represented to plaintiffs that he had done due diligence on Big Horn and its principals and was investing his own money in the business. It is unclear from the record what precisely happened to plaintiffs' investment, but, suffice it to say, plaintiffs lost money and eventually sued Yessick, Big Horn, and various other defendants. We first examine plaintiffs' claims for violation of federal securities laws.

Plaintiffs' complaint alleged a claim of fraud under § 12(2) of the Securities Act of 1933 (the 1933 Act). With regard to this claim, the Supreme Court has recently clarified that, because actions under § 12(2) lie only when sellers of securities have made material misstatements or omissions "by means of a prospectus," such actions are limited to fraud in the sale of securities sold through public offerings. See Gustafson v. Alloyd Co., 115 S. Ct. 1061, 1071 (1995). Because plaintiffs present no evidence that the securities here were part of a public offering, their argument regarding fraudulent concealment is

irrelevant, and the grant of summary judgment in favor of defendants on this claim was correct.

Turning to plaintiffs' fraud claims under § 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. §§ 78a-78kk, it is clear that such claims must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation," Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S. Ct. 2773, 2782 (1991). Plaintiffs urge us to find error in the district court's conclusion that a December 14, 1992 letter should have alerted them by the exercise of reasonable diligence to the existence of their fraud claims, thus triggering the limitations period for those claims. We decline to find such error.

The letter of December 14, 1992, from the president of Big Horn to its investors describes certain operational shortcomings which had been unearthed in the Big Horn office and management's response to those problems. App. Vol. I at 307-10. It then discusses a lawsuit filed by Charles Yessick, one of the defendants here. With respect to that suit, the letter states:

> The plaintiffs' [sic] are principally industry promoters (i.e., parties who purchase working interests and resell those interests at a higher price based upon a "value added" theory. Plaintiffs' lack of experience and understanding in the oil and gas business generally accounts for their approach and handling of their concerns. . . . Plaintiffs have misrepresented BHOC's intentions and actions to working interest owners and third party service providers alike. We would like to think that this has resulted from their misunderstanding

and lack of experience, but we are concerned about malicious intentions as well. . . . Mr. Yessick's ego has clouded his judgment and impaired his capacity to reasonably evaluate the current state of affairs. . . .

The plaintiffs have raised some legitimate issues, all of which are capable of resolution without litigation. These are not parties with the experience and capabilities to personally supervise your interests in the wells. This recent experience has demonstrated that they were not as capable of evaluating the risks and merits of their investments as they had led us to believe, i.e., they certainly failed to recognize the risks of dealings with a turnkey operator. Accordingly, if plaintiffs are making these evaluations on your behalf, you deserve to hear all sides of the issues and make some decisions for yourself armed with all relevant information and points of view.

Id. at 309-10.

Although their complaint and their brief to this court are too general to clarify with certainty the nature of the alleged fraud worked on plaintiffs, our review of the record reveals allegations that Yessick misrepresented to plaintiffs the manner of his compensation, telling them he would be paid with interests from the operator's retained interest instead of being paid a mark up or commission, misrepresented his expertise in the oil business, and falsely led plaintiffs to believe that he had done appropriate due diligence regarding Big Horn and its principals before recommending that plaintiffs invest. We agree with the district court that these issues were discussed in the December 14, 1992 letter with sufficient specificity to alert plaintiffs that the suppositions they had been proceeding upon were probably untrue. As we observed in Anixter v. Home-

Stake Production Co., 977 F.2d 1549, 1552 (10th Cir. 1992), cert. denied, 507 U.S. 1029 (1993):

> [A]n aggrieved investor must bring an action once he discovers or should have discovered the fraud. The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act.

Id. (quotation omitted). Because plaintiffs did not file their complaint until more than one year after they should have discovered their cause of action, we affirm the conclusion of the district court that plaintiffs' 1934 Act claims are time-barred.

Plaintiffs also allege a claim for nonregistration brought under § 12(1) of the 1933 Act. In Anixter, 939 F.2d 1420, we held that the statute of limitations for express causes of action under § 12 of the 1933 Act, which includes an express cause of action for nonregistration in subsection (1), see 15 U.S.C. § 77(*l*)(1), is one year after the date of discovery. Id. at 1433-34. This discovery rule encompasses the concept of fraudulent concealment because a cause of action for concealed fraud accrues "after such discovery should have been made by the exercise of reasonable diligence." Id. at 1434 (quoting 15 U.S.C. § 77(m)). Thus, "[i]f a putative plaintiff should have discovered the cause of action, suit must be filed within one year of the day the discovery should have been made." Id.

The same reasoning which dooms plaintiffs' 1934 Act fraud claim applies equally to their 1933 Act nonregistration claim. The December 14, 1992 letter should have alerted plaintiffs to the existence of their claim; their complaint filed more than one year after receipt of this letter was untimely.

Plaintiffs next alleged a violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c), (d). To avoid summary judgment on this claim, plaintiffs must show disputed issues of material fact establishing that defendants "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1541 (10th Cir. 1993). A "pattern of racketeering activity" is defined in 18 U.S.C. § 1961(1) to include conduct that is "chargeable" or "indictable" under a host of state and federal laws, National Org. for Women, Inc. v. Scheidler, 114 S. Ct. 798, 803 (1994), the so-called predicate offenses. At least two predicate offenses are required to prove a pattern of racketeering activity. See Stone, 998 F.2d at 1543.

For their predicate offenses, plaintiffs allege that defendants are guilty of mail fraud, see 18 U.S.C. § 1341, and wire fraud, see id. at § 1343. We will discuss those contentions below. At this point, however, it is clear that plaintiffs have failed to present evidence sufficient to establish at least one of the elements of a RICO claim, namely, the "pattern" requirement.

In Stone, 998 F.2d 1534, this court extensively discussed the proof necessary to show a pattern of racketeering activity, including the need for proof of a relationship between the predicate acts, id. at 1543, and the more difficult proof of a threat of continuing activity, id. Even a cursory reading of Stone reveals that plaintiffs have totally failed to advance evidence approaching the specificity required to state a RICO claim. Plaintiff's conclusory statements that they "have met their burden of establishing a prima facie case with respect to their RICO claims" is insufficient to avert summary judgment on this claim.

As mentioned above, plaintiffs also advanced a claim of mail and wire fraud. The district court found that this claim, as well as plaintiffs' claims of common law fraud and civil conspiracy to defraud, failed for lack of any established facts to support those claims. We agree.

In order to maintain their state law fraud claims, plaintiffs must prove the following elements:

> (1) a material false representation, (2) made with knowledge of its falsity, or recklessly made without knowledge of its truth, and as a positive assertion, (3) with the intention that it be relied upon by another, (4) reliance thereon by another party to its injury, and (5) that all elements be proven with a reasonable degree of certainty.

Whitson v. Oklahoma Farmers Union Mut. Ins. Co., 889 P.2d 285, 287 (Okla. 1995). The elements of plaintiffs' mail and wire fraud claims are (1) the existence of a scheme to defraud and (2) use of the mails or interstate wire

communication (as appropriate) to facilitate the scheme. See United States v. Hanson, 41 F.3d 580, 583 (10th Cir. 1994). Both claims must include evidence that the defendants intended to work a deception. Id. Further, the evidence constituting fraud must be stated with particularity, although intent may be averred generally. Fed. R. Civ. P. 9(b).

Plaintiffs' complaint is devoid of the specific allegations needed to plead a case of fraud and would have been properly dismissed under Fed. R. Civ. P. 12(b)(6). Despite this failing, we have examined the record and all depositions, affidavits and other matters on file as required by Fed. R. Civ. P. 56(c) and find no evidence regarding defendants' intent to defraud plaintiffs. All of plaintiffs' fraud claims suffer from this defect, making the district court's grant of summary judgment on these claims not only appropriate but required as a matter of law.

Finally, plaintiffs allege that defendants breached existing contracts apparently in the form of various letters of agreement contained in the record. In order to state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach. 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1235 (1969).

The sum of plaintiffs' allegations in their complaint to support their breach of contract claim is the following:

103. Plaintiffs entered into a series of written contracts with Defendants YESSICK and/or BIG HORN.

104. Defendants YESSICK and BIG HORN have breached those contracts to the Plaintiffs' detriment.

105. Said breaches have damaged the plaintiffs in excess of Ten Thousand and No/100 Dollars. ($10,000.00).

App. Vol. I at 51.

Needless to say, this allegation falls far short of the detail needed to state a claim for breach of contract even under the relaxed pleading standards of Fed. R. Civ. P. 8. In their brief, plaintiffs discuss defendants' alleged failure to assign to them their interests in the specified wells and the fact that they were charged for work done on the wells. Without further evidence, however, it is unclear whether or why either of these two actions constituted a breach of contract by these defendants. Because plaintiffs are unable to establish the facts necessary to support their claim of breach, the discussion of rescission in the brief as a possible remedy is irrelevant.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge