Robert F. BERNING and Evelyn C. Berning, Plaintiffs–Appellants,

and

UNITED STATES of America, Intervenor,

v.

A.G. EDWARDS & SONS, INC., and John R. Stuhrenberg, Defendants–Appellees.

No. 91–3318.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1992.

Decided March 25, 1993.

Rosemarie J. Guadnolo, Horvath, Lieber & Quilici, Chicago, IL (argued), for plaintiffs-appellants.

Kent Lawrence, Charles J. Risch (argued), Randall B. Gold, Lawrence, Kamin, Saunders & Uhlenhop, Chicago, IL, for defendants-appellees.

Barbara C. Biddle, Scott R. McIntosh (argued), Dept. of Justice, Civ. Div., Appellate Section, Washington, DC, for intervenor.

Paul Gonson, Jacob H. Stillman, James R. Doty, Leslie E. Smith, Kelly Rowe, S.E.C., Office of Gen. Counsel, Washington, DC, for amicus curiae, S.E.C.

Before CUMMINGS, Circuit Judge, PELL, Senior Circuit Judge, and KAUFMAN, Senior District Judge.[*]

FRANK A. KAUFMAN, Senior District Judge.

This is a private federal securities suit brought by Robert and Evelyn Berning ("the Bernings") against A.G. Edwards & Sons, Inc., and John R. Stuhrenberg (collectively "the brokers") in the United States District Court for the Northern District of Illinois. The Bernings' action, presenting claims arising under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10(b)–5, 17 C.F.R. § 240.10b–5, was filed in August 1989. The brokers asserted that the suit was time-barred under this Court's subsequent decision in *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). On March 7, 1991, in *Berning I*, the District Court denied the brokers' motion for summary judgment on limitations grounds, holding that *Short* need not be applied retroactively. Instead, the District Court relied upon and applied this Court's pre-*Short* practice of borrowing the applicable limitations period for private Section 10(b) actions from state law, i.e. Illinois law, which in this instance provided for a limitations period of three years.

On June 20, 1991, however, the Supreme Court, in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), required the use of a uniform federal one year statute of limitations coupled with a three year statute of repose, thus requiring plaintiffs to bring suit within one year of the time at which they became or should have become aware of their cause of action and in any event, not later than three years from the time of the events giving rise to said cause of action.[1] On the same day, the Supreme Court handed down its decision in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), in which the majority of the Court discarded the use of "selective prospectivity" in civil litigation, that is, the practice of applying a new rule of law in the case in which it is announced but not applying the new rule to parties in other pending civil suits. Relying upon *Lampf* and *Beam*, the District Court granted the brokers' motion for reconsideration of its earlier denial of their motion for summary judgment and held the Bernings' claims to be time-barred (*Berning II*). 774 F.Supp.

---

[*] The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation.

1. *Short* also imposed a "one and three" limitations period, i.e. a one year period of limitations and a three year time of repose; however, in *Short* this Court looked to Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m, whereas *Lampf* borrowed from Section 9(e) of the 1934 Act, 15 U.S.C. § 78i(e).

480. The Bernings filed a timely appeal on October 7, 1991 to this Court.

While the Bernings' appeal was before this Court, Congress "decided that retroactive application of *Lampf* was not desirable," *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1458 (7th Cir.1992), and accordingly, in one of the miscellaneous provisions of the Federal Deposit Insurance Corporation Improvement Act of 1992, amended Section 27A of the '34 Act so as effectively to overturn the combination of *Lampf* and *Beam* upon which the trial court in the instant case had relied in granting the brokers' summary judgment on the limitations issue. In pertinent part, the new section 27A reads:

> The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

15 U.S.C. § 78aa–1(a).

The instant action was commenced prior to June 19, 1991; thus, new section 27A applies herein. The brokers, however, contend: 1) section 27A is unconstitutional and thus the trial court's grant of summary judgment under *Lampf* and *Beam* should be affirmed; 2) alternatively, assuming that section 27A is constitutional, *Short* should be applied retroactively so as to bar the Bernings' claims; and 3) the district court erred in denying the brokers' motion for summary judgment on grounds other than limitations, i.e. the district court erred in denying summary judgment to the brokers because a) the Bernings had validly released the brokers from liability for the claim at issue, and/or b) there was insuffi-

cient evidence to establish the element of *scienter* under Rule 10(b)–5.

## I

Robert Berning was born in 1926 and Evelyn Berning was born in 1931. Evelyn Berning has a bachelor's degree in education and Robert has a bachelor's degree in chemical engineering and a masters degree in education. Robert has worked as a teacher in a parochial school since 1953. The Bernings first invested in stocks in 1953, with such investments increasing to approximately $86,000 by 1973. In 1975, the Bernings began investing with appellee Stuhrenberg, who was then a broker at Merrill, Lynch. Shortly thereafter, the Bernings began investing in options upon Stuhrenberg's recommendation. The Bernings purchased covered calls [2] and naked puts.[3] When the Chicago Board of Options Exchange began trading indexed options in 1983, the Bernings began to purchase OEX options which are based on the Standard and Poors 100.[4] In 1982, plaintiffs opened an account with a discount broker, and Evelyn took primary responsibility for deciding which stocks to purchase for that account. Corresponding with Stuhrenberg's change of brokerage firms, the Bernings transferred their account to Kidder, Peabody in 1979 and to appellee A.G. Edwards & Sons, Inc. in 1985.

On October 13, 1987, Robert, acting on Stuhrenberg's recommendation, authorized the purchase of 30 OEX November 325 calls, 30 OEX November 330 calls, and 30 OEX November 300 puts. On Wednesday, October 14, the Dow Jones Industrial Average (DJIA) dropped 95 points. On October 15 and 16, the DJIA fell a further 57 and 108 points, respectively. On Saturday the 17th, Stuhrenberg recommended to the

---

**2.** Covered call writing entails writing (selling without presently owning) a call option ("call") against stock which is presently owned. The purchaser of the call obtains the right to buy 100 shares of the underlying stock from the writer at a fixed per share price (the "strike price") at any time prior to the expiration date of the call.

**3.** The purchaser of a put obtains the right to sell 100 shares of the underlying stock to the writer

of the put at a specified per share price ("the strike price") at anytime prior to the expiration date of the put.

**4.** Index options differ from equity options in two respects. First, their strike price corresponds to the value of a particular index, rather than a per share price for a particular stock. Second, they are settled in cash rather than stock.

Bernings that they close out all their open option positions at a loss.[5] The Bernings authorized Stuhrenberg to do so at the opening of the market on the morning of Monday, October 19. The brokers failed to close out the Bernings' positions at the opening of the market; instead, an order to close out the call options was entered at 9:28 a.m. on October 19 and an order to close out the puts was entered after 2:00 p.m. on that same day. On Monday, October 19, the market opened with the DJIA down approximately 200 points from the level at which it had closed on the previous Friday and it continued to sink rapidly, eventually closing down a total of 508.32 points.

Plaintiffs' put positions were eventually closed out at a price of $105, producing a loss of $315,000. The Bernings contend that had their order to close out their put positions been executed at the market's opening rather than approximately five hours later, their position would have been closed out at the opening price of $60, reducing their loss by $135,000. With the $315,000 loss, there was a negative balance of $50,000 in the Bernings' account resulting in a margin call of $17,000.

## II

In the days following the market crash of October 19, 1987, the parties embarked upon a course of sometimes heated discussions culminating in the signing, on October 29, 1987, by the Bernings and Robert Bagby, Vice President of A.G. Edwards & Sons, Inc., of the following agreement.

### RELEASE AND SETTLEMENT AGREEMENT

WHEREAS, A.G. Edwards & Sons, Inc., a Delaware corporation (hereinafter referred to as "Edwards"), has made certain claims against Robert Berning and Evelyn Berning for damages incurred by them in connection with certain transactions in Account No. 296–006–076 (the "Account") with Edwards; and

WHEREAS, the parties to said claim desire to compromise and settle all matters in controversy between them;

NOW, THEREFORE, for and in consideration of their mutual and respective promise and agreements herein, the parties do hereby agree as follows:

1. Edwards hereby agrees to credit the Account of Robert Berning and Evelyn Berning the sum of One Hundred Thirty Five Thousand Dollars ($135,000.00) to correct an order error.

2. In consideration of said credit, Robert and Evelyn Berning hereby forever waives, releases and renounces any and all claims that it may now have against Edwards arising out of or based upon any transactions with Edwards, its officers, agents, employees and related corporations which arose prior to the date of this release.

3. Robert Berning and Evelyn Berning hereby agree to remain liable for the remaining debit balance in the Account.

The brokers, relying on that agreement, claim entitlement to summary judgment. The Bernings, opposing, contend that the release sought to be asserted against them by the brokers is unenforceable for, among other reasons, lack of consideration. The brokers, in response, assert that a credit of $135,000 is sufficient consideration to support the release. The District Court "[v]iewing the facts in the light most favorable to plaintiffs," concluded that "it can be inferred that defendants had no good faith belief that plaintiffs were not entitled to the $135,000 credit." Citing Illinois law, the District Court ruled that "paying part of an amount claimed due where there is no *bona fide* dispute as to the portion paid cannot, even when a release of the entire claim is expressly given, constitute adequate consideration for settlement of the entire claim."

---

5. Writing an option creates an "open position" because the writer has the obligation to either sell (call) or buy (put) 100 shares of the underlying stock until the position is "closed". The position is closed when: a) the option expires unexercised, b) the option is exercised and the obligations thereunder are performed, or c) the writer buys an offsetting option.

■ The brokers, upon this appeal, ask this Court to reverse the District Court's denial of summary judgment on the release executed by the Bernings. We decline to do so. In considering the brokers' motion for summary judgment, the District Court was required to resolve all factual disputes and to draw all reasonable inferences in the Bernings' favor. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). In so doing, the Court drew the permissible inference that the brokers had no good faith belief that the Bernings were not entitled to the $135,000. Such an inference would necessarily lead to a conclusion that the release was voidable for lack of consideration under either Illinois or federal law.[6]

Similarly, the District Court did not err in refusing to grant summary judgment for the brokers on account of their alleged lack of scienter, since the record reveals ample basis for the conclusion that there remain a number of disputed factual issues to be resolved. Nor, under the circumstances, need we further address at this time the Bernings' contention that factual disputes remain concerning whether they executed the agreement under duress. Suffice it to say that we agree with the District Court's denial of summary judgment on the basis of the Release and Settlement Agreement.

### III

■ This brings us to the further position of the brokers that upon this appeal this Court need not reach the question of the constitutionality of section 27A because application of the law, including principles of retroactivity, which was in effect in the 7th Circuit on June 19, 1991, requires the determination that the Bernings' claim is time-barred under *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990). In other words, the brokers would have us determine that the District Court erred in initially holding that *Short* ought not be

applied retroactively in this case. We decline so to do. In *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir.1992), Judge Cudahy noted that with respect to the retroactivity of decisions, the "controlling precedent on June 19, 1991 was *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which we and other circuits had followed without much question." 972 F.2d at 1458–59. Under *Chevron Oil* we are required to balance, on a case-by-case basis, three factors in order to determine whether a new rule will be applied to parties already before the Court. A new rule is to be applied prospectively where:

(1) the decision at issue overrules clear precedent on which litigants may have relied or addresses an issue of first impression which was not foreshadowed; (2) retroactive application of the decision would retard the operation of a federal statute; and (3) retroactive application would result in substantial inequity.

*Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1326 (7th Cir.1989) (citing *Chevron Oil*, 404 U.S. at 106–07, 92 S.Ct. at 355). In applying the *Chevron Oil* balancing test to the question of the retroactive application of *Short*, Judge Cudahy wrote:

Our prior precedent on the applicability of the Illinois limitations period was quite clear. As to the second two factors, new statutes of limitations are generally applied prospectively so long as the plaintiff can demonstrate reliance on the old limitations period.

*McCool*, 972 F.2d at 1459.

In *Berning I* the District Court held that *Short* ought not be applied retroactively so as to bar the Bernings' claim, and in so doing, determined that "to the extent plaintiffs were obliged to show they actually relied on existing precedent in delaying the filing of their lawsuit, such reliance can be inferred from the facts before this court." *Berning I* at 9 n. 5. Such an inference is one reasonably drawn from the facts of

---

6. Since we would reach the same result under either Illinois or federal law, it is unnecessary for us to decide whether the brokers are correct in their contention that the District Court erred

in acceding to the apparent agreement of the parties below that Illinois law was to govern this issue.

this case. Judge Cudahy noted in *McCool* a similar basis for inferring reliance. 972 F.2d at 1459. In denying the brokers' motion for summary judgment, the District Court was obliged to make all reasonable inferences in favor of the Bernings. We conclude, therefore, that the Illinois statute of limitations applies to this case. It is undisputed that the instant action was instituted prior to the expiration of the Illinois limitations period.

## IV

 Having now determined all non-constitutional issues in favor of the Bernings, we face the brokers' argument that section 27A is unconstitutional. The brokers raise three constitutional objections to section 27A under the separation of powers doctrine: 1) section 27A violates the separation of powers doctrine by legislatively reopening otherwise final judgments; 2) section 27A effectively violates the rule against selective prospectivity of decisions announced in *Beam, supra,* a rule which the brokers believe to be constitutionally based; and 3) section 27A is unconstitutional under *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), because it tells the courts how to decide pending cases without changing the underlying rules governing those cases. We reject each of these arguments and find section 27A to be constitutional.

As an initial matter, we need not reach the brokers' contention that section 27A violates the Constitution by impermissibly upsetting final judgments of the federal courts. Whatever the merits of that argument in the abstract, the stark fact is that in the instant case there is no final judgment to be upset. At the time that section 27A was passed, this case was pending on appeal. Congress is free to change the law applicable to pending cases, even when (as here) the cases have left the trial courts and are being heard on appeal. *See, e.g., Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 813 (11th Cir. 1988). The principle that Congress may impose new legal rules applicable in pending cases was recognized by the Supreme Court almost two hundred years ago in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). Because Congress is free to make changes in the law applicable to pending civil cases, "[t]he legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong." *Tonya K. ex rel. Diane K. v. Board of Education,* 847 F.2d 1243, 1247 (7th Cir.1988).

The brokers place primary reliance on their second separation of powers argument that Beam disallows selective prospectivity of decisions *on constitutional grounds* and that section 27A, to the extent that it conflicts with *Beam,* is therefore unconstitutional. The difficulty with that argument is that careful examination of the multiple opinions in *Beam* reveals that that decision was not constitutionally based. Of the six Justices who together comprised the *Beam* majority, only three—Justices Blackmun, Marshall, and Scalia—agreed that the Constitution mandated a bar against selective prospectivity. *See Beam,* — U.S. at — - —, 111 S.Ct. at 2449-51 (Blackmun, Marshall & Scalia, JJ., concurring in the result. Justices Souter and Stevens, emphasizing that "[t]he grounds for our decision today are narrow," described the selective prospectivity issue strictly as a "choice-of-law question" rather than a constitutional issue, and Justice White concurred "on the narrow[ ] ground employed by Justice Souter." *Id.* — U.S. at —, —, 111 S.Ct. at 2443, 2448, 2449. Finally, Chief Justice Rehnquist and Justices O'Connor and Kennedy, in the course of their dissent, found no barrier to selective prospectivity, either constitutional or otherwise. *See id.* — U.S. at — - —, 111 S.Ct. at 2451-56. Thus, a majority of the Court *declined* to hold in *Beam* that the bar against selective prospectivity enunciated in that case is a constitutionally mandated rule.

Moreover, even if we were convinced that *Beam* was premised on a constitutionally required rule of law, we would not think the scope of that rule comprehends the Legislative as well as the Judicial Branch. Even those Justices who dis-

cerned a constitutional bar to selective prospectivity were concerned solely with the limits of the *judicial* power under Article III, not with limits on the legislative power under Article I. Justice Scalia reasoned that courts lack the authority to engage in selective prospectivity because the judicial power under Article III "is the power 'to say what the law is,' not the power to change it." —— U.S. at ——, 111 S.Ct. at 2451 (Scalia, J., concurring in the judgment). Similarly, Justice Blackmun observed that "prospectivity ... breaches our obligation to discharge our constitutional function" under Article III. *Id.* —— U.S. at ——, 111 S.Ct. at 2450 (Blackmun, J., concurring in judgment). Thus, those members of the Court who found a constitutional bar to selective prospectivity based their opinions on the belief that the judicial power under Article III requires courts to apply newly recognized rules of law to litigants in cases already pending. In this appeal, we deal, by contrast, with the limits of the legislative power under Article I. Amended section 27A simply creates a new limitations period applicable to suits filed prior to *Lampf.* Even if it could be read as a constitutional decision, *Beam* at most holds only that courts must apply the law, as they find it, to pending cases; *Beam* does not hold that Congress lacks the power to change the law for pending cases or that courts are constitutionally compelled to disregard such changes.

The brokers' final constitutional argument relies upon *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). The brokers contend that section 27A does not change existing law or create new law, but rather commands the courts to decide pending cases in a particular manner, and thus falls afoul of *Klein*'s prohibition against such legislative interference in the

judicial sphere. The Tenth and Eleventh Circuit Courts of Appeal have already considered and rejected similar challenges to section 27A. *See, Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir. 1992); *Anixter v. Home–Stake Production Co.,* 977 F.2d 1549 (10th Cir.1992). Today, we join them.

Simply put, as the Tenth Circuit has stated, "[t]his case is not *Klein.*" [7] *Anixter,* 977 F.2d at 1545. First, Congress did, in enacting section 27A, "change the underlying law." Although section 27A does not apply to all private section 10(b) actions, it changes the law governing the limitations period for all cases filed prior to *Lampf,* by replacing *Lampf*'s uniform limitations period with the limitations periods previously in effect in each jurisdiction. Section 27A thus does not direct courts to decide cases without regard to the governing law. Rather, it alters the governing law itself.

In that connection, section 27A is analogous to the statute recently upheld by the Supreme Court in *Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). In *Robertson,* Congress passed special legislation, known as the Northwest Timber Compromise, to resolve two pending environmental suits concerning timber programs in the Pacific Northwest. The statute " 'determine[d] and direct[ed]' " that specified government actions must be deemed to satisfy the environmental laws at issue in the two pending cases, which the statute identified by name and docket number. —— U.S. at ——, 112 S.Ct. at 1411 (quoting subsection (b)(6)(A) of the Northwest Timber Compromise). The Ninth Circuit struck down that provision as violative of separation of powers under *Klein,* on the ground that it "does not, by its plain language, repeal or amend the environmental laws underlying this liti-

---

7. [U]nlike Section 27A now before us, the enactment at issue in *Klein* ordered: (1) the Court of Claims to find evidence of a Presidential pardon or amnesty inadmissible for claimants seeking redress under the Abandoned and Captured Property Act; (2) the Supreme Court to dismiss for lack of jurisdiction any appeal from a Court of Claims judgment based on the claimant's reliance on a pardon; and (3) the Court of Claims was to

treat a claimant's receipt of a Presidential pardon as conclusive evidence of disloyalty. The congressional act was, thus, unconstitutional as an effort "to prescribe a rule for the decision of a cause in a particular way." *Klein,* 80 U.S. at 146.

*Anixter,* 977 F.2d at 1544–45. It is to be noted, in addition, that in *Klein* the Supreme Court wrote that Congress was free to change the law applicable to pending cases. 80 U.S. at 146–47.

gation," but instead "directs the court to reach a specific result and make certain factual findings under existing law in connection with two [pending] cases." *Seattle Audubon Society v. Robertson*, 914 F.2d 1311, 1316 (9th Cir.1990).

A unanimous Supreme Court reversed, concluding that the provision at issue "compelled changes in law, not findings or results under old law," by modifying the environmental statutes which formed the basis for the pending suits. —— U.S. at ——, 112 S.Ct. at 1413. That the challenged statute identified, by names and caption numbers, the pending cases which would be affected did not alter the Court's determination since, "to the extent that [the challenged provision] affected the adjudication of the [pending] cases, it did so by effectively modifying the provisions at issue in those cases." *Id.* —— U.S. at ——, 112 S.Ct. at 1414. Section 27A is cast in more general terms than the statute at issue in *Robertson*, and explicitly creates a new legal rule, unlike the statute in *Robertson* which on its face merely "determine[d] and direct[ed]" that specified actions would be deemed to satisfy existing legal rules. If the statute in *Robertson* "changed the underlying law" sufficiently to pass muster under *Klein*, as a unanimous Supreme Court held, then an amended section 27A clearly does so. Accordingly, we conclude that section 27A is a constitutional exercise of the legislative power.

## V

We REVERSE the decision of the District Court and remand this action for further proceedings consistent with this opinion.